# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

_____

TAMARA PHILLIPS,

        Plaintiff,

v.                                               Case No. 06-CV-1041

RUSSELL JACK, JAMES HOFFMAN,
JOHN WARD, CITY OF WAUKESHA,
COMMUNITY INSURANCE CORPORATION,
and JOHN DOE,

        Defendants,
and

HUMANA HEALTH PLAN, INC.,

        Subrogated Defendant.

_____

# ORDER

On September 5, 2006, plaintiff Tamara Phillips filed a summons and complaint against the named defendants in Waukesha County Circuit Court seeking money damages pursuant to 42 U.S.C. § 1983 and Wisconsin state tort law. On October 5, 2006, defendants Russell Jack ("Jack"), James Hoffman ("Hoffman") and Community Insurance Corporation ("CIC") removed this case to the United States District Court for the Eastern District of Wisconsin pursuant to 28 U.S.C. §§ 1441 and 1446. Defendants moved for summary judgment pursuant to Fed.R.Civ.P. 56. Defendant CIC moved separately to dismiss plaintiff's claims against it on the pleadings pursuant to Fed.R.Civ.P. 12(c).

## BACKGROUND

On November 11, 2005, the Waukesha Police Department ("WPD") received several emergency calls reporting a suspected drunk driver in the city of Waukesha, Wisconsin. Callers identified the car as a black 1998 Nissan Maxima with license plate number 617AYY. (Defs.' Proposed Findings of Fact ("DPFF") ¶ 35). One caller stated that the driver was "all over and . . . almost just killed, like 10 people," while another caller stated that the driver was "totally impaired and she's gonna kill somebody." (DPFF ¶ 36). Defendants Jack, Hoffman and Officer Andrew Schmidt were dispatched to the area to investigate. (DPFF ¶¶ 37-39). While en route, a dispatcher advised Jack, Hoffman and Schmidt that the vehicle was registered to plaintiff and that "it's a stolen vehicle through our department from May of '05." (Pl.'s Additional Proposed Findings of Fact ("PAPFF") ¶ 40(A)).

Before the responding officers located the vehicle in question, the dispatcher noticed an inconsistency in the WPD's records relating to the license plate reported by callers. While the plate was assigned to a black 1998 Nissan Maxima in the Wisconsin Department of Transportation records, the WPD's records indicated that the same plate number was assigned to a silver 1997 Honda Civic reported stolen by plaintiff six months earlier. (PAPFF ¶ 42). The dispatcher relayed the information to Jack and Hoffman, stating that "[t]he listed owner on the Nissan Maxima is the complainant for the vehicle theft on the Honda Civic silver with that plate assigned. So I am unsure why that plate is reassigned to the Nissan Maxima." (PAPFF ¶ 40(C)). Jack and Hoffman testified at their depositions that they did not hear this

dispatch. (PAPFF ¶ 40(E)).  The dispatcher directed another officer to call the owner of the vehicle reported stolen, the plaintiff, to confirm whether her car was in fact stolen.  The officer called plaintiff, but was not able to reach her.[1]  (PAPFF ¶ 43).

Jack and Hoffman were the first officers to locate the black Nissan after a bus driver reported spotting the vehicle in some bushes on the 1800 block of Kensington Drive. (DPFF ¶¶ 41, 44).  Approximately twenty minutes had passed from the point at which the first officer was dispatched to investigate the drunk driver calls to the time when the bus driver reported the car in the bushes.  (DPFF ¶¶ 38, 41).  Upon arriving at the scene, Jack and Hoffman positioned their squad cars approximately thirty to forty feet away from the black Nissan and initiated what the WPD refers to as a "high-risk traffic stop."[2]  (DPFF ¶¶ 46, 49).  Several other squad cars responded to the scene in addition to Jack and Hoffman.[3]

Without approaching the vehicle, Jack ordered the driver to show her hands and informed her that she was under arrest.  Despite Jack repeating the order several times, the driver did not comply.  (PAPFF ¶¶ 53-54).  The driver was seen reaching for a compartment in the vehicle, retrieving and lighting a cigarette, and at some point the driver laid down across the console of the vehicle and placed her feet

---

[1] The officer apparently left a voicemail. (PAPFF ¶ 43)

[2] The WPD's policy is to follow high-risk traffic stop procedures when approaching a stolen vehicle. These procedures include maintaining a distance of forty to fifty feet from a suspect's vehicle. (DPFF ¶¶ 50-51).

[3] At least ten squad cars eventually responded to the scene. (PAPFF ¶ 52).

out the window on the driver's side.⁴ (PAPFF ¶¶ 54, 54(A)). Both Jack and Hoffman testified that they believed the car to be running at the time. (PAPFF ¶ 47(A)). Jack repeatedly ordered the driver to exit the vehicle, but the driver did not comply and instead lit another cigarette. (PAPFF ¶¶ 55-58). After some time had passed, Jack directed Hoffman to retrieve a weapon referred to as an SL6, which fires polyurethane baton rounds.⁵ (DPFF ¶ 60). The use of an SL6 on a suspect has been deemed "less lethal" under the WPD's use of force policies, and is considered tantamount to the use of a hand baton or a beanbag shotgun. (PAPFF ¶ 61, 61(A-C)). The WPD defines less lethal force as "the intentional use of an instrument to impede a subject of which is not likely to cause death." (PAPFF ¶ 61(A)). Under the WPD policies, less lethal force is warranted for subjects demonstrating violent or aggressive behavior, and was designed to be used when the use of a hand baton would be unsafe or impractical. (PAPFF ¶ 61(D); DPFF ¶ 62).

On Jack's instruction, Hoffman fired the first SL6 round into the driver's side door of the Nissan. The impact created a loud bang and left a baseball-size dent in the door, but the driver did not appear to react. (DPFF ¶¶ 66-67; PAPFF ¶¶ 67-69). Jack again ordered the driver out of the car with her hands in the air. After the driver did not comply, Jack warned her that if she did not exit the car, she would be shot

---

⁴ Hoffman stated that he believed that the driver may have been going in and out of consciousness at some point. (PAPFF ¶ 54(A)).

⁵ Based on the record, the court cannot determine the amount of time that Jack and Hoffman were on the scene before the SL6 was used. Plaintiff proposed, and defendants have not disputed, that Hoffman was on the scene for twenty-five minutes prior to deploying the SL6. However, the parties have also agreed that the use of the SL6 was authorized at approximately 7:47 p.m., only nine minutes after the bus driver first reported spotting the plaintiff's car in the bushes. (PAPFF ¶¶ 41, 59(A)).

with the SL6. (DPFF ¶¶ 70-72). Jack directed Hoffman to fire the SL6 at the driver, and advised Hoffman to move in with a Taser if the SL6 did not work.[6] (DPFF ¶¶ 77-78; PAPFF ¶ 78(A)). The first SL6 shot struck the driver's leg, which was exposed and hanging from the driver's side window. The driver reached toward her leg and yelled out, but did not exit the car. (PAPFF ¶¶ 81(A-C), 82). After failing to comply with another police order to exit the car, the driver was struck three more times with SL6 rounds fired by Hoffman.[7] (DPFF ¶¶ 82-84). Eventually, the driver complied with Jack's orders, exited the car and, according to Hoffman's report on the incident, "fell down onto the sidewalk into a ball." (Decl. of Captain Russell Jack Ex. C Wauk 0145). Jack ordered the driver to walk away from the vehicle or she would be shot again. (DPFF ¶¶ 89-90). The driver complied and was taken into police custody.

During the arrest, Officer Schmidt noted a strong odor of intoxicants on the driver. Hoffman searched the Nissan and found the plaintiff's Wisconsin driver's license, along with a two-ounce bottle of liquor. The driver was transported by ambulance to Waukesha Memorial Hospital, during which time she refused to identify herself or answer questions. Having identified the driver as plaintiff, Officer Schmidt issued her a citation for operating while intoxicated ("OWI") and for driving

---

[6] Plaintiff asserts, and defendants concede that under the WPD's use of force policies, the use of a Taser on a subject was considered to be an option of lesser force level than the use of an SL6, a baton or a beanbag shotgun. (PAPFF ¶ 78(B)).

[7] Plaintiff was hit twice on her right leg and twice on her left leg. (PAPFF ¶ 121(A)).

-5-

with a revoked license.[8] (DPFF ¶¶ 95, 99-100, 102, 108, 114 122). Plaintiff received stitches on her right leg as a result of the SL6 projectile impact. (PAPFF ¶121).

The circumstances leading up to plaintiff's arrest provide some context to the situation faced by Jack and Hoffman. On May 28, 2005, a silver 1997 Honda Civic registered to plaintiff was involved in a hit-and-run accident.[9] On May 29, 2005, plaintiff reported her Honda stolen to the WPD. Within days of reporting the car stolen, plaintiff notified the City of Waukesha that she had recovered the Honda. However, the WPD apparently has no record of receiving her notification. (DPFF ¶¶ 11-15). In October, 2005, defendant John Ward ("Ward"), an officer in the WPD, was assigned to follow up with the outstanding stolen vehicle report on the Honda Civic. After attempting to reach plaintiff by phone, Ward sent plaintiff a letter requesting that plaintiff contact the WPD regarding her report. The letter, sent October 20, 2005, stated that "[i]f we do not hear from you in ten (10) days the item(s) will be removed from the computer system and no longer listed as stolen." (Decl. of Officer John Ward Ex. A, Docket # 47). Plaintiff admitted that she was aware of the WPD's efforts to contact her, but did not follow up with the WPD. (DPFF ¶¶ 23, 25, 29). Ward decided not to remove the Honda from the WPD's stolen property listing, and notified his superior at the WPD that he could not confirm the vehicle had been recovered. The WPD's investigation of plaintiff's stolen vehicle

---

[8] Blood test results later measured plaintiff's blood alcohol level at 0.307g/100mL (DPFF ¶ 117). Plaintiff's driver's license had been revoked at the time of her arrest as a result of two prior OWI convictions. (DPFF ¶ 10)

[9] When asked about the hit-and-run accident at her deposition in this case, plaintiff invoked her Fifth Amendment privilege against self-incrimination. (DPFF ¶ 13).

report was ongoing at the time of plaintiff's arrest. (DPFF ¶ 34). In an investigation following plaintiff's arrest, Hoffman found that the silver 1997 Honda Civic reported stolen by plaintiff had been purchased by a third party in August of 2005 from a local body shop. (DPFF ¶¶ 135-136). Hoffman concluded that the Wisconsin Department of Transportation had allowed the vehicle to be re-registered despite the fact that the WPD had listed the vehicle as stolen in May of 2005. (DPFF ¶ 141). This had caused the dispatcher and responding officers to receive the conflicting information on the evening of plaintiff's arrest.

## ANALYSIS

Summary judgment is appropriate where the moving party establishes that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Material facts are those facts that "might affect the outcome of the suit," and a dispute about a material fact is "genuine" if a reasonable finder of fact could find in favor of the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is appropriate where a party has failed to make "a showing sufficient to establish the existence of an element essential to that party's case and on which the party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 256-57. A party opposing summary judgment must set forth specific facts showing that there is a genuine issue for trial and may not rely on allegations or denials of the adverse party's pleading. Fed.R.Civ.P. 56(e). In conducting its review, the court views all facts and draws all reasonable inferences

in favor of the nonmoving party. *Tanner v. Jupiter Realty Corp.*, 433 F.3d 913, 915 (7th Cir. 2006).

Here, defendants move for summary judgment claiming that Jack and Hoffman acted reasonably in both initiating the high-risk stop and using the SL6 projectiles to effectuate plaintiff's arrest. Defendants also assert that Jack and Hoffman are entitled to qualified immunity, and that the claims against the City of Waukesha must be dismissed because plaintiff has not demonstrated that its policy or custom caused a deprivation of her rights. Defendants also address plaintiff's state law claims of battery and breach of ministerial duty against Ward, arguing that plaintiff has not established evidence sufficient to support each claim.

In order to prevail under 42 U.S.C. § 1983, a plaintiff must establish that the defendants deprived him or her of a federal constitutional right, and that the defendants acted under color of state law.[10] *Reed v. City of Chicago*, 77 F.3d 1049, 1051 (7th Cir. 1996). Even if a plaintiff can establish a § 1983 claim, government officials may be entitled to qualified immunity if their actions did "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Sledd v. Lindsay*, 102 F.3d 282, 287 (7th Cir. 1996) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see Ellis v. Wynalda*, 999 F.2d 243, 246 n. 2 (7th Cir. 1993); *see also Hope v. Pelzer*, 536 U.S. 730, 739 (2002). The threshold question for the court in determining qualified immunity "is whether plaintiff's

---

[10] Based on the parties briefs, the second element does not appear to be in dispute.

-8-

allegations, if true, establish a constitutional violation." *Hope*, 536 U.S. at 736 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

The court first looks to the merits to determine whether plaintiff in this case has alleged conduct violative of plaintiff's Fourth Amendment rights. The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons . . . against unreasonable . . . seizures." U.S. Const. amend. IV. Claims of excessive force against law enforcement during a stop or arrest are measured under the Fourth Amendment's reasonableness standard. *See Graham v. Connor*, 490 U.S. 386, 395 (1989); *see also Tennessee v. Garner*, 471 U.S. 1, 8 (1985). The reasonableness of the force used to carry out an arrest depends on the totality of the circumstances, and requires a balancing of the "nature and quality of the intrusion" with the "government interests at stake." *Estate of Phillips v. City of Milwaukee*, 123 F.3d 586, 592 (7th Cir. 1997) (quoting *Graham*, 490 U.S. at 395). The circumstances surrounding the use of force are judged on the basis of a reasonable officer on the scene, not 20/20 hindsight. *See Graham*, 490 U.S. at 396. This reasonableness analysis allows for the split-second judgments that officers are required to make, often based on "tense, uncertain and rapidly evolving" circumstances. *Id.* at 396-97. Factors for the court to consider include: (1) the severity of the crime; (2) the immediate threat posed to the safety of officers or others; and (3) "whether the suspect is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

In *Saucier,* the Supreme Court provided two hypothetical cases in order to distinguish between the merits of an excessive force claim and the application of qualified immunity:

> [On the merits], [i]f an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, . . . the officer would be justified in using more force than in fact was needed . . . . [However] [a]n officer might correctly perceive all of the relevant facts but have a mistaken understanding as to whether a particular amount of force is legal in those circumstances. If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense.

*Saucier*, 533 U.S. at 205.

Plaintiff asserts that Jack and Hoffman unreasonably treated plaintiff's Nissan as a stolen vehicle, which directly led officers to commence a "high-risk" stop during which the use of force was authorized. Plaintiff also argues that given the circumstances after the stop had commenced, including plaintiff's incapacitated condition, the use of SL6 projectiles against her constituted unreasonable force. Defendants respond that Jack and Hoffman reasonably relied on plaintiff's stolen vehicle report in treating the stop as high-risk. Defendants also assert that after the stop began, Jack was justified in ordering plaintiff out of the vehicle and, upon plaintiff's noncompliance, Jack and Hoffman were justified in utilizing the SL6.

In considering whether to conduct a high-risk stop, Hoffman and Jack were undoubtedly mistaken in their belief that plaintiff's Nissan was a stolen vehicle. The radio transmissions between the WPD dispatcher and officers responding that evening demonstrate some confusion as to the make and model of the vehicle reported stolen. Prior to confronting plaintiff, Hoffman and Jack were aware that the

-10-

Case 2:06-cv-01041-WEC   Filed 09/19/08   Page 10 of 19   Document 74

reported license plate was assigned to a Nissan registered to plaintiff, and that a Honda Civic assigned to the same plate number had been reported stolen several months earlier. Hoffman and Jack did not hear the WPD dispatcher's transmission informing them that plaintiff had made the stolen vehicle report, nor did they know who was driving the Nissan when they reached the scene. Based on this information, Hoffman and Jack appear to have erred on the side of caution and commenced a high-risk stop pursuant to the WPD's policies under the assumption that the Nissan may indeed have been stolen. The court cannot conclude that Jack and Hoffman were unreasonably mistaken in concluding that plaintiff's Nissan may have been a stolen vehicle.

However, the circumstances of the stop changed after Hoffman, Jack and other officers arrived on the scene and had the benefit of observing plaintiff. The parties agree that plaintiff did not respond to officers' repeated orders to show her hands and exit the vehicle. Nor is it disputed that officers were justified in giving such orders. *See Pennsylvania v. Mimms*, 434 U.S. 106, 111 (1977) (holding that ordering a driver out of a vehicle during a traffic stop based on reasonable suspicion does not violate the Fourth Amendment). Defendants Hoffman and Jack were on the scene for somewhere between ten and twenty-five minutes before deploying the SL6. Before the first projectile was fired, officers observed plaintiff laying down across the front console of the vehicle with her feet dangling out the window on the driver's side. Defendant Hoffman also stated that he believed that plaintiff may have been going in and out of consciousness. The first warning shot fired by Hoffman into

the driver's side door, which caused no noticeable reaction from plaintiff, seemed to have confirmed Hoffman's belief. Even after the first SL6 round impacted her leg, plaintiff kept her legs exposed outside the car's window for Hoffman to hit with three more SL6 rounds. Other than plaintiff's noncompliance with officers' demands, her earlier erratic driving, and the initial possibility of a stolen vehicle, no evidence has been presented to the court showing that plaintiff posed an *immediate* threat to the safety of officers or the public after Jack, Hoffman and other officers surrounded her vehicle. Moreover, the record does not indicate that plaintiff was actively resisting arrest or attempting to flee from officers. At the same time, Hoffman's deposition testimony suggests that a Taser or "OC spray" might have worked against plaintiff. (PAPFF ¶¶ 78(C-D)). Indeed, defendants do not dispute that officers on the scene had access to "OC spray" and Tasers that evening. (PAPFF ¶ 53). Viewing the facts in a light most favorable to plaintiff, a reasonable jury could find that the use of the SL6 rounds was unreasonable force to effectuate plaintiff's arrest.

The second part of the qualified immunity analysis requires the court to determine whether the use of the SL6 in the context of this case violated a clearly established constitutional right. *See Clash v. Beatty*, 77 F.3d 1045, 1047-48 (7th Cir. 1996). In a case alleging a Fourth Amendment violation, clear law applicable to the situation confronted by officers must have existed at the time of the incident giving officers fair notice that their conduct was unlawful. *See Brosseau v. Haugen*, 543 U.S. 194, 198-200 (2004). Plaintiff bears the burden of showing that the conduct alleged violated a clearly established right by either directing the court to a closely

analogous case or by showing that the force involved was so excessive that officers would have been on notice of its unlawfulness. *See id.* Neither party has brought a controlling case to the court's attention that is closely analogous to the circumstances here. Plaintiff directs the court to one Eleventh Circuit case that considered the use of SL6 projectiles. In *Mercado v. City of Orlando*, the court denied qualified immunity to an officer who shot a suspect threatening to commit suicide in the head with an SL6, cracking his skull. *See* 407 F.3d 1152, 1155-59 (11th Cir. 2005) (holding that officers cannot use force wholly unnecessary to any legitimate police purpose). While *Mercado* provides some guidance, the court finds that its facts are not sufficiently analogous to this case such that defendants here would have been placed on notice.

Plaintiff asserts that, notwithstanding the lack of case law on point, the use of force in this case was so excessive that officers were on notice of its unlawfulness. The Seventh Circuit has made clear "that police officers do not have the right to shove, push, or otherwise assault innocent citizens without any provocation." *Clash*, 77 F.3d at 1048. At the same time, police cannot have the threat of a § 1983 action impeding their ability to deal with a dangerous fugitive or escapee within reasonable limits. *Id.* (citations omitted). If the facts are viewed in a light most favorable to plaintiff, the court cannot say that as a matter of law Jack and Hoffman could have

-13-

reasonably believed that their actions were lawful.[11] *See Hill v. Miller*, 878 F.Supp. 114, 116 (N.D.Ill. 1995) (denying qualified immunity to an officer who forced a suspect against a squad car, and handcuffed him tightly causing injuries during an arrest for suspected drunk driving and resisting). The parties agree that plaintiff here was not an innocent citizen. Yet, the facts allow for the reasonable inference that Jack authorized and Hoffman fired multiple SL6 projectiles on a semi-conscious, passive suspect who had not displayed any aggressive or violent behavior towards police or others. Viewed in this light, such force would have been clearly excessive. Therefore, the court cannot conclude that as a matter of law Hoffman and Jack are entitled to qualified immunity.

At this juncture, the court is precluded from granting defendants summary judgment because genuine issues of material fact remain. Specifically, the parties dispute whether plaintiff's actions within her car could have been considered acts of active evasion towards police, or simply the passive effects of plaintiff's heavily intoxicated and semi-conscious state. Whether or not plaintiff's actions were characteristic of a drunk individual at the brink of unconsciousness or whether her actions could have been considered purposeful, conscious resistance to police requires inferences to be drawn by a jury. At the summary judgment stage, the court may not "choose between competing inferences or balance the relative weight of

---

[11] As the Fourth Circuit stated, "the use of any significant force, up to and including deadly force, not reasonably necessary to effect an arrest – as where the suspect neither resists nor flees or where the force is used after a suspect's resistance has been overcome or his flight thwarted – would be constitutionally unreasonable." *Kidd v. O'Neil*, 774 F.2d 1252, 1256-57 (4th Cir. 1985).

-14-

Case 2:06-cv-01041-WEC   Filed 09/19/08   Page 14 of 19   Document 74

conflicting evidence." *Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005). Moreover, summary judgment is granted sparingly in excessive force cases due to their fact-intensive nature. *See id.* at *773.* Therefore, the court must deny defendants' motion for summary judgment on plaintiff's § 1983 claim against defendants Jack and Hoffman.

Plaintiff also asserts a Fourth Amendment claim against Ward. Plaintiff alleges that by not removing plaintiff's stolen vehicle report from the WPD and state records, Ward created the encounter that allowed for the use of the SL6. Plaintiff points to Jack's statement that he probably would not have ordered the use of the SL6 if he did not believe the car was stolen. (Pl. Resp. Br. 46). Yet, plaintiff has failed to establish that Ward's actions caused Hoffman and Jack and deploy the SL6 in the manner in which they did. Plaintiff has not alleged that Ward participated in either plaintiff's arrest or the eventual use of the SL6. Ward attempted to contact plaintiff multiple times before her arrest to verify that plaintiff's car had been recovered. Ward decided to allow for further investigation before removing plaintiff's stolen vehicle reports from the WPD records. Taken in a light most favorably to the plaintiff, the court cannot conclude that Ward's conduct violated plaintiff's Fourth Amendment right against unreasonable seizures. Even if plaintiff's allegations against Ward had established a Fourth Amendment violation, plaintiff has provided no legal precedent demonstrating that Ward's conduct was clearly established as unlawful such that Ward would not receive qualified immunity. *See Hope*, 536 U.S. at 739. Moreover, plaintiff's battery claim does not apply to Ward. Therefore, the

-15-

Case 2:06-cv-01041-WEC   Filed 09/19/08   Page 15 of 19   Document 74

court grants summary judgment for defendant Ward and dismiss all claims against him.

Plaintiff has also failed to allege any claim against an unknown defendant John Doe. Plaintiff had an opportunity to amend her complaint to identify and allege claims against other defendants, but has failed to properly do so.[12] *See Strauss v. City of Chicago*, 760 F.2d 765, 770 (7th Cir. 1985) (denying plaintiff leave to amend complaint after full opportunity to amend). The court also lacks jurisdiction over John Doe because he was never served with a summons or a complaint in the case. *See id.* The court, therefore, dismisses all claims against John Doe.

Defendants have moved to dismiss plaintiff's state law claims of battery and breach of ministerial duty. Plaintiff has conceded in her response to defendants' motions that defendants did not have a statutory or administrative duty to remove plaintiff's stolen vehicle report from the Wisconsin State Department of Justice's system prior to plaintiff's arrest. (Pl.'s Resp. Br. 47). Therefore, the court dismisses the ministerial duty claim against all defendants. With respect to the battery claim, plaintiff's claim depends in large part on the same facts as her § 1983 claim. Under Wisconsin law, a battery is defined as the unlawful use of force, intentionally directed at another and resulting in bodily harm. *See Vandervelden v. Victoria*, 177 Wis.2d 243, 249 (Wis. Cr. App. 1993) (citing the Wisconsin Civil Jury Instructions). If the actions of Jack and Hoffman are found to be unlawful, each may be liable for battery.

---

[12] Plaintiff filed a motion to amend her complaint which was denied by the court for failure to attach the proposed amendments. As noted in that decision, the court's denial did not foreclose plaintiff's opportunity to file a proper motion to amend. (Order 6/19/07 Docket #32).

-16-

Therefore, summary judgment is inappropriate on plaintiff's claim of battery at this time.

Defendants have also moved to dismiss all claims against the City of Waukesha. Defendants argue that under Wisconsin law, the City cannot be held directly liable for either the § 1983 claim or the intentional torts of its employees. In order to hold a municipality directly liable in a § 1983 claim, a plaintiff must show that a municipal policy or custom caused the violation of plaintiff's rights. *See Monell v. Dep't of Social Services of City of New York*, 436 U.S. 658, 694-95 (1978). Plaintiff has not pleaded a policy of the City of Waukesha or the WPD caused a deprivation of her Fourth Amendment rights. In her response brief, plaintiff alleges that a WPD policy authorized the techniques used by Jack and Hoffman. (Pl. Resp. Br. 48). Plaintiff, however, did not plead this claim in her Amended Complaint, nor did plaintiff seek to amend her complaint to include such a claim. In a footnote to her response brief, plaintiff now seeks leave of the court to amend her complaint. Because plaintiff was provided with ample time to amend her complaint, the court denies plaintiff's request and dismisses plaintiff's § 1983 claims against the City of Waukesha. *See Villa v. City of Chicago*, 924 F.2d 629, 632 (7th Cir. 1991) (holding that district courts have discretion to grant or deny leave to amend complaints). Plaintiff has also pleaded that the City of Waukesha is liable for indemnity. Under Wisconsin law, a city is required to indemnify its employees for acts committed within the scope of employment. *See Graham v. Sauk Prairie Police Comm'n*, 915 F.2d 1085, 1088-89 (7th Cir. 1990) (citing Wis. Stat. § 895.46). Defendants have not argued that

-17-

defendants Jack and Hoffman were working outside the scope of their employment during the incident in question. Therefore, defendant City of Waukesha is not entitled to summary judgment with respect to plaintiff's claim of indemnity.

Defendant CIC moved separately for judgment on the pleadings claiming that it is immune from suit under Wisconsin law. When considering motions for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c), the court must again view the facts in a light most favorable to the nonmoving party. *See United States v. Wood*, 925 F.2d 1580, 1581 (7th Cir.1991). The court may then grant the motion only if it is "beyond doubt that the non-movant can plead no facts that would support his claim for relief." *Id.* Plaintiff claims that CIC is liable for indemnity as the insurer of the City of Waukesha and Jack and Hoffman. Although plaintiff has not provided the court with any legal authority on which the court may rely, Wisconsin law allows a plaintiff to bring a direct action against the indemnitor of a defendant. *Bell v. City of Milwaukee* 536 F.Supp. 462, 476 (E.D.Wis. 1982). Plaintiff has pleaded indemnity against CIC and not pleaded liability under Wisconsin's direct action statute. *See* Wis. Stat. 632.24. Therefore, CIC may remain a defendant as an indemnitor of Hoffman and Jack.

Accordingly,

**IT IS ORDERED** that the defendants' motion for summary judgment (Docket #35) be and the same is hereby **GRANTED** in part;

**IT IS FURTHER ORDERED** that plaintiff's claims pursuant to 42 U.S.C. § 1983 against defendants John Ward, John Doe and City of Waukesha be and the same are hereby **DISMISSED** with prejudice;

**IT IS FURTHER ORDERED** that plaintiff's breach of ministerial duty claim against defendant John Ward be and the same is hereby **DISMISSED** with prejudice;

**IT IS FURTHER ORDERED** that defendants John Ward and John Doe be and the same are hereby **DISMISSED** as party defendants in this action;

**IT IS FURTHER ORDERED** that defendant Community Insurance Corporation's motion for judgment on the pleadings (Docket #33) be and the same is hereby **DENIED**.

Dated at Milwaukee, Wisconsin, this 19th day of September, 2008.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge